# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**KATHY C. McINTIRE,**

    Plaintiff,

v.                                                   CIVIL ACTION NO.: 3:13-CV-143
                                                            (JUDGE GROH)

**CAROLYN COLVIN,**
**ACTING COMMISSIONER**
**OF SOCIAL SECURITY,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge Robert W. Trumble. Magistrate Judge Trumble filed his R&R, [ECF 19], on September 24, 2014. In the R&R, Magistrate Judge Trumble recommends the Court grant the Commissioner of Social Security's Motion for Summary Judgment, [ECF 15], because substantial evidence supported the Administrative Law Judge's ("ALJ") denial of the Plaintiff's application for disability insurance benefits. Magistrate Judge Trumble recommends the Court deny the Plaintiff's Motion for Summary Judgment, [ECF 12], and that this case be dismissed with prejudice.

## I. Background

On November 10, 2010, the Plaintiff, Kathy C. McIntire, filed her application for disability insurance benefits, alleging multiple ailments, including: depression, anxiety, insomnia, fibromyalgia, chronic fatigue, syringomyelia, neuropathy, chiari malformation, migraines, endometriosis, and a heart condition. The Plaintiff had previously filed an

application, in March of 2004, which was denied. Another application was submitted in 2007. After a hearing on the 2007 application, ALJ Norma Cannon issued an unfavorable decision denying the Plaintiff's application. The instant claim, originally filed in 2010, was denied in March of 2011, and again upon reconsideration in May of 2011. After a hearing on this application, ALJ Jeffrey P. La Vicka issued an unfavorable decision on September 17, 2012, finding the Plaintiff was not disabled under the Social Security Act. The Appeals Council denied the Plaintiff's request for review in September of 2013.

On October 14, 2013, the Plaintiff filed this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision denying her claims for disability insurance benefits under Title II of the Social Security Act. See id. §§ 401-434. Subsequently, the parties each moved for summary judgment. On September 24, 2014, Magistrate Judge Trumble issued an R&R recommending the Court grant the Commissioner's Motion for Summary Judgment, deny the Plaintiff's Motion for Summary Judgment, and dismiss this case with prejudice. The Plaintiff timely filed objections to the R&R on October 7, 2014.

## II. Standards of Review

### A. Review of the R&R

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must review *de novo* those portions of the magistrate judge's findings to which the Plaintiff objects. However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and if parties do not object to an issue, the parties' right to *de novo* review is waived as to that issue. See Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Therefore, this Court will conduct a *de novo* review only as to those portions of the R&R to which the Plaintiff objects and will review the remaining portions of the R&R

for clear error.

B.  **Review of the ALJ Decision**

The Social Security Act limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The phrase "supported by substantial evidence" means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Perales, 402 U.S. at 401 (citing Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

A reviewing court must not re-weigh the evidence or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456. Ultimately, it is the duty of the ALJ reviewing a case, not the responsibility of the Court, to make findings of fact and to resolve conflicts in the evidence. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This Court does not find facts or try the case *de novo* when reviewing disability determinations."); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.").

C.  **Evaluation Process**

To determine whether a claimant is disabled, the ALJ conducts a five-step evaluation process. 20 C.F.R. § 404.1520(a)(4). If the ALJ finds the claimant is disabled or not disabled at a certain step, the ALJ does not proceed to the next step. Id. The steps are

as follows:

> Step One: Determine whether the claimant is engaging in substantial gainful activity;
>
> Step Two: Determine whether the claimant has a severe impairment;
>
> Step Three: Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;
>
> Step Four: Consider the RFC assessment to determine whether the claimant can perform past relevant work; and
>
> Step Five: Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

Davidson v. Astrue, Civil Action No. 2:11-CV-55, 2012 WL 667296, at *3 (N.D.W. Va. Feb. 28, 2012) (citing 20 C.F.R. § 404.1520(a)(4)).

Here, under the five-step process, the ALJ found the Plaintiff was not disabled from any time between October 28, 2009, the alleged onset date of her disability, through December 31, 2011, when she was last insured.

### III. Discussion

Upon careful consideration of the record, the parties' motions, and the R&R, the Court finds that Magistrate Judge Trumble committed no clear error with regard to the portions of the R&R to which the Plaintiff filed no objections. The Plaintiff specifically objects that the ALJ failed to give controlling weight to the opinions of three doctors who treated the Plaintiff: Dr. Sean Nolan, Dr. Thomas J. Romano, and Dr. Alfredo Aguirre. In addition, the Plaintiff objects that the ALJ failed to discuss certain evidence and treatment records.

4

### A. The ALJ's Credibility Determinations

The Plaintiff alleges the ALJ failed to give sufficient weight to the opinions of the three doctors and that he ignored certain evidence in the record. A substantial portion of the Plaintiff's argument focuses on the credibility determinations the ALJ made when assessing the opinions of the three doctors.

This Circuit has adopted a two-step process by which an ALJ must evaluate a claimant's symptoms and the credibility of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). First, the ALJ must determine if the claimant's medically documented impairments could reasonably be expected to cause the alleged symptoms. Id. at 594. Second, the ALJ must evaluate the credibility of the subjective evidence, considering the claimant's statements about "the intensity and persistence of the . . . pain, and the extent to which it affects [the plaintiff's] ability to work." Id. at 595. The ALJ analyzes the second step "using statements from treating and nontreating sources and from the claimant." Felton-Miller v. Astrue, 459 F. App'x 226, 229 (unpublished per curiam) (citing 20 C.F.R. §§ 404.1529(a), 416.929(a) (2011)). The ALJ also considers additional factors in evaluating a claimant's statements including "consistency in the claimant's statements, medical evidence, medical treatment history, and the [ALJ's] observations of the claimant." Id.

In this case, the ALJ determined the Plaintiff's credibility was lacking. Accordingly, he gave little weight to the assessments of Dr. Romano and Dr. Aguirre, because their analysis was based primarily upon the Plaintiff's subjective complaints. In reaching this conclusion, the ALJ relied in part on the lack of objective medical evidence in the record to support the Plaintiff's subjective allegations. As Magistrate Judge Trumble indicates in

his R&R, this was improper. While an ALJ may make credibility determinations, it is improper for an ALJ to impose an absolute requirement of objective medical evidence to support every subjective allegation a plaintiff makes. For example, objective evidence of pain, a naturally subjective phenomenon, is not required. Craig, 76 F.3d at 594. Magistrate Judge Trumble found the ALJ's error was harmless. The Fourth Circuit Court of Appeals has applied harmless error analysis to social security disability determinations in the past. See Morgan v. Barnhart, 142 F. App'x 716, 722-23 (4th Cir. 2005) (unpublished).

The Court agrees that the error was harmless and thus remand is unnecessary. The ALJ gave little weight to the opinions of Dr. Romano and Dr. Aguirre for several reasons–not just because there was a lack of objective evidence supporting the Plaintiff's claims. Indeed, the ALJ identified several reasons he felt the Plaintiff lacked credibility. For example, he noted the extreme severity and wide variety of ailments the Plaintiff had alleged over the years. The ALJ discussed how the Plaintiff alleged "difficulty with virtually every possible physical and mental ability, including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, remembering, completing tasks, concentrating, understanding, following instructions, and using her hands." While the ALJ recognized the Plaintiff had abnormalities and had received significant treatment, he noted that "she has reported allegations so extreme as to appear implausible, particularly in light of the medical evidence." Also noteworthy was the Plaintiff's history of "drug seeking behavior." As the ALJ wrote, drug seeking behavior "naturally lends itself to overstating symptoms to obtain more medications." Dr. Aguirre, whose opinion the Plaintiff argues was unfairly discounted, is cited in the ALJ's decision as

stating, "I reminded the patient that she abused the medication in the past, and her use of benzodiazepines will be contingent on her adherence." The ALJ also relied upon a prior ALJ's determination that the Plaintiff lacked credibility. Most important, the Plaintiff's claims–and the opinions of the doctors who issued the most dire opinions as to her condition–were contradicted by other evidence.

When conducting a review of an ALJ's decision, this Court does not substitute its judgment for that of the Secretary. See Hays, 907 F.2d at 1456. Instead, the Court asks whether an ALJ's decision was supported by substantial evidence. Here, substantial evidence supported the ALJ's credibility determinations, and it was appropriate for him to utilize these determinations in his analysis of the doctors' opinions.

## B. The Treating Physician Rule

The Plaintiff objects that the ALJ failed to give controlling weight to the opinions of Drs. Nolan, Romano, and Aguirre, as required by the "treating physician rule." An ALJ will generally give more weight to opinions from treating physicians, because treating physicians are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s)." 20 C.F.R. § 416.927(c)(2). However, "[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" Craig, 76 F.3d at 590 (quoting Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). A treating physician's opinion on the nature and severity of a plaintiff's impairment is given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a plaintiff's] case record." Id. (quoting 20 C.F.R. §§

7

404.1527(d)(2), 416.927(d)(2)). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id.

In weighing a medical opinion, an ALJ will consider the examining relationship; the treatment relationship, including the length of treatment, the frequency of examination and the nature and extent of the treatment relationship; the relevant evidence, including medical signs and laboratory findings, supporting the opinion; the consistency of an opinion with the record as whole; the specialization of the treating physician; and any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). An ALJ does not need to address each individual factor in making his decision, but should sufficiently demonstrate his analysis of the relevant evidence. See Pinson v. McMahon, Civil Action No. 3:07-1056-PMD-JRM, 2009 WL 763553, at *10 (D.S.C. Mar. 19, 2009).

Here, the ALJ did not commit reversible error in his analysis of the three doctors' evidence. As discussed above, the ALJ determined that the Plaintiff and her allegations lacked credibility, and therefore the opinions of the doctors who relied on those allegations lacked credibility as well. Furthermore, the ALJ found the conclusions of these doctors inconsistent with other evidence and unsupported by anything but the Plaintiff's subjective complaints. These are legitimate, sufficiently specific reasons to discount or reject treating physicians' opinions. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 67 (unpublished per curiam) (4th Cir. 2014) (holding that an ALJ was permitted to reject treating physician testimony in its entirety when the ALJ "was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons"). The treating physician rule is not absolute

when the opinion of a treating physician is met with persuasive contrary evidence. See Hines v. Barnhart, 453 F.3d 559, 563 n.2 (4th Cir. 2006) (quoting Hunter, 993 F.2d at 35)). The contrary evidence in this case is ample and persuasive.

While the ALJ directly explained why he gave little weight to Dr. Romano and Dr. Aguirre, he did not address Dr. Nolan by name. In the record, Dr. Nolan's opinion is found in treatment notes and in a brief letter addressed to Dr. Romano. Much of Dr. Nolan's opinion is comprised of the Plaintiff's subjective complaints, which were, at least in part, conveyed to Dr. Nolan by Dr. Romano. The ALJ was justified in affording that evidence less weight, for the same reasons he was entitled to discount Dr. Romano's opinion. See Williams v. Shalala, 997 F.2d 1494, 1499 (D.C. Cir. 1993) ("That the ALJ did not expressly state his reason for not applying the treating physician rule is of no moment because he noted the contradictory evidence in the record, which record supplies the reason."). Therefore, it was not error for the ALJ to decline to give controlling weight to the evidence presented by the three doctors.

### C. The ALJ's Review of the Evidence

The Plaintiff avers the ALJ's failure to discuss specific treatment evidence concerning Drs. Nolan, Romano, and Aguirre amounts to error. The Court has reviewed the ALJ's analysis of the relevant evidence and finds no reversible error. The ALJ's decision was thorough. The ALJ reviewed the opinions of multiple doctors whose conclusions contradicted the Plaintiff's claims. The ALJ gave significant weight to the opinion of Dr. Gabriel Sella, with whom the Plaintiff underwent a consultative examination. The ALJ found Dr. Sella's personal observations of the Plaintiff's health to be inconsistent with the Plaintiff's extreme allegations of disability. Likewise, the ALJ examined the findings

9

of Ms. Aileen Mansuetto and Dr. Fred Jay Krieg, who assessed the Plaintiff's mental complaints during a consultative examination. Ms. Mansuetto and Dr. Krieg diagnosed the Plaintiff as having a panic disorder and agoraphobia, amongst other ailments, but, all things considered, the ALJ found these diagnoses consistent with moderate mental symptoms. "These findings do not suggest debilitating mental limitations," he wrote. The ALJ then discussed the Plaintiff's gall bladder surgery, and how Dr. John Raves, who performed the surgery, noted no complications. "From my standpoint," Dr. Raves stated, "[the Plaintiff] can resume normal activities and has no restrictions." The ALJ wrote, "The fact that Dr. Raves did not note the presence of any physical restrictions tends to undermine the claimant's allegations, particularly in light of the extreme nature of those complaints."

### 1. Evidence Regarding Dr. Nolan

As noted above, the ALJ did not specifically name Dr. Nolan in his decision. In the record, the evidence concerning Dr. Nolan consists of several pages of treatment notes and a short letter addressed to Dr. Romano, in which Dr. Nolan recounts the Plaintiff's medical complaints. The Plaintiff argues the ALJ's failure to cite Dr. Nolan's notes or letter was error, because Dr. Nolan was a treating specialist who observed the Plaintiff over a prolonged period of time. A reviewing court cannot determine if an ALJ's findings are supported by substantial evidence unless he explicitly indicates the weight he gave to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). But an ALJ is not obligated to comment on every piece of evidence presented. Lilly v. Astrue, Civil Action No. 5:07-CV-77, 2008 WL 4371499, at *3 (N.D.W. Va. Sept. 22, 2008). Instead, the ALJ must provide a minimal level of analysis that enables reviewing courts to "track the ALJ's reasoning." Id. (quoting Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995)); see also

Bowman v. Heckler, 706 F.2d 564, 568 (5th Cir. 1983) (affirming an ALJ's decision when it "at least inferentially gives the rationale for rejecting the conclusion of the 'treating' psychiatrist").

It appears evidence referenced by Dr. Nolan played a part in the ALJ's decision. For example, the ALJ found endometriosis as a severe impairment, thereby adopting Dr. Nolan's diagnosis. The Plaintiff avers there are multiple references to endometriosis in the record. She argues that, because endometriosis is addressed multiple times, there is no evidence the ALJ actually considered evidence regarding Dr. Nolan's treatment. However, in addition to his finding of fact regarding endometriosis, the ALJ explicitly stated that he reviewed the "entire record." Furthermore, even if he had specifically commented on Dr. Nolan's letter, it would have made no difference in the ALJ's ultimate decision. Much of Dr. Nolan's letter simply recounts, in his own words, the Plaintiff's "very convoluted and complicated medical situation." There is no indication the ALJ did not consider this evidence, other than his failure to cite Dr. Nolan by name. The ALJ articulated the reasoning behind his decision, in which he considered the most relevant and probative evidence in the record. See Lilly, 2008 WL 4371499, at *4 (finding substantial evidence supported an ALJ's decision–although the ALJ did not explicitly mention a specific assessment–in light of the ALJ's credibility determination, discussion of other relevant evidence, and fact that he considered the record as a whole). Therefore, the Court finds the ALJ's failure to specifically discuss Dr. Nolan was not reversible error.

### 2. Evidence Regarding Dr. Romano

The ALJ considered evidence relating to Dr. Romano's treatment of the Plaintiff and found that it was at odds with the substantial weight of the evidence in the record. Dr.

11

Romano, the ALJ wrote, had indicated the Plaintiff was limited to three hours sitting per day. The ALJ found these statements conflicted with consultative examination findings that concluded the Plaintiff had no limitations in sitting. While Dr. Romano found symptoms of fibromyalgia and a decreased range of motion, those findings were insufficient to support the "extreme functional limitations" that he reported.

Contrary to Dr. Romano's findings, the ALJ determined there was no evidence the Plaintiff could not perform a reduced range of sedentary work activities. This determination was not based upon an errant disregard for Dr. Romano's opinion or a refusal to consider the entire record. Instead, the ALJ deliberately gave Dr. Romano's opinion less weight than other, more probative evidence. When a doctor's opinion is inconsistent with other substantial evidence, it is appropriate to accord that opinion significantly less weight. See Craig, 76 F.3d at 590. This analysis was appropriate.

The Plaintiff also objects that the ALJ failed to discuss specific evidence and pertinent treatment records. While the ALJ did not explicitly reference each individual aspect of Dr. Romano's treatment of the Plaintiff, he stated that he reviewed the entire record, and he deliberately considered and afforded little weight to Dr. Romano's medical opinion. The ALJ addressed the Plaintiff's fibromyalgia diagnosis, a diagnosis made by Dr. Romano. The ALJ noted that Dr. Romano identified eighteen tender points on the Plaintiff, which was sufficient to diagnose the Plaintiff as having fibromyalgia. One of the reasons the ALJ chose to give little weight to Dr. Romano's findings is because they were founded largely on the Plaintiff's subjective allegations, which the ALJ had already determined lacked credibility. "Again," the ALJ wrote, "many of the statements made by [Dr. Romano] rely largely on the claimant's subjective allegations." Substantial evidence supported the

ALJ's conclusions, and any error in not referencing specific pieces of evidence in the record was harmless.

### 3. Evidence Regarding Dr. Aguirre

The Plaintiff argues the ALJ's analysis of evidence concerning Dr. Aguirre was faulty. First, he argues the ALJ failed to give Dr. Aguirre's opinion controlling weight as a treating physician. As detailed above, this argument fails because Dr. Aguirre's opinion was contradicted by more credible evidence found in the record. The ALJ considered Dr. Aguirre's opinion, in light of the contradictory evidence and the Plaintiff's poor credibility, and deliberately afforded it little weight.

One of the reasons the ALJ gave Dr. Aguirre's opinion little weight is because it had already been discounted when the Plaintiff's previous application for benefits was before ALJ Cannon in 2009. ALJ La Vicka found that the assessment Dr. Aguirre submitted in the instant case, completed in 2012, was similar to the assessment ALJ Cannon reviewed. Accordingly, ALJ La Vicka was influenced by ALJ Cannon's negative perception of Dr. Aguirre's credibility. In her 2009 decision, ALJ Cannon wrote that Dr. Aguirre's "conclusions as to the claimant's limitations are overly severe and inconsistent with the full longitudinal record." ALJ La Vicka found that little had changed in the intervening years to alter this evaluation, and considered this evidence when finding Dr. Aguirre not credible. This was appropriate under the treating physician rule, as Dr. Aguirre's opinion was contradicted by a significant amount of evidence and was otherwise unsupported by the record. The Plaintiff contends that, to the contrary, new and significant evidence was introduced in the time between ALJ Cannon's decision and ALJ La Vicka's decision, and therefore it was inappropriate for ALJ La Vicka to adopt ALJ Cannon's credibility

determination. But ALJ La Vicka reviewed the totality of the evidence and still found that Dr. Aguirre had offered no rationale supporting his conclusions, other than reliance on the Plaintiff's "overstated" allegations. Moreover, immediately after addressing Dr. Aguirre's opinion, the ALJ stated that he crafted "an extremely restricted residual functional capacity," to accord the Plaintiff "the utmost benefit of the doubt." For these reasons, even if the ALJ had committed error on this issue, it would have been harmless. See Morgan, 142 F. App'x at 722-23 (finding that, even if an ALJ erred in failing to give special weight to a treating physician's medical opinion, it was harmless error because the ALJ's RFC analysis did not materially contradict the treating physician's opinion).

Additionally, the ALJ considered the opinion of Dr. Jeff Boggess, a state agency consultant who prepared a psychiatric assessment. Dr. Boggess indicated that he did not give controlling weight to Dr. Aguirre's opinion from the 2009 decision because of "new and significant psych evidence." This differs from ALJ La Vicka's finding that the 2009 assessment is "essentially the same" as the 2012 assessment. However, the ALJ did not ignore Dr. Boggess' analysis in making his decision. Indeed, the ALJ wrote that he gave "[c]onsiderable weight" to Dr. Boggess' opinion, which was consistent with the evidence in the record and at odds with Dr. Aguirre's finding of severe limitations. In Dr. Boggess' report, immediately after addressing Dr. Aguirre's opinion, Dr. Boggess writes, "The claimant appears only partially credible as per allegations." The Court does not re-weigh such evidence or substitute its judgment for that of the Commissioner. See Hays, 907 F.2d at 1456. Even still, Dr. Boggess' assessment–which the ALJ reviewed–supports, rather than contradicts, the ALJ's ultimate decision. Substantial evidence supported the ALJ's findings as to Dr. Aguirre.

The ALJ applied the appropriate law in reaching his decision. Substantial evidence supported his credibility determinations and his analysis regarding the treating physician rule. Likewise, substantial evidence supported his conclusions as to Dr. Nolan, Dr. Romano, and Dr. Aguirre.

## IV. Conclusion

Accordingly, because substantial evidence supported the ALJ's decision and any errors on his part were harmless, the Court **OVERRULES** the Plaintiff's objections. Upon review of the above, it is the opinion of this Court that the Report and Recommendation, [ECF 19], should be, and is, hereby **ORDERED ADOPTED**. For the reasons more fully stated in the Report and Recommendation, this Court **ORDERS** that the Defendant's Motion for Summary Judgment, [ECF 15], be **GRANTED** and the Plaintiff's Motion for Summary Judgment, [ECF 12], be **DENIED**. Accordingly, this Court further **ORDERS** that this matter be **DISMISSED WITH PREJUDICE** and that it be stricken from this Court's active docket.

It is so **ORDERED**.

Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter a separate order of judgment in favor of the Defendant.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** January 28, 2015

GINA M. GROH
UNITED STATES DISTRICT JUDGE